June, 1810.

SHERWOOD
v.
BURR.

---

WALTER SHERWOOD *against* EDMOND BURR AND GERSHOM BURR.

The conveyance of an incorporeal hereditament issuing out of real estate is not within the statute against selling pretended titles. (Tit. 97. c.17. s. 1.)
—A right to a privilege appurtenant to land may be gained by an exclusive enjoyment for a sufficient length of time, in analogy to the statute of limitations; but no period short of that required by such statute to gain a title to land will be sufficient for this purpose.

MOTION for a new trial.

This was an action on the case, for obstructing the plaintiff in the free use and enjoyment of a fulling mill.

The plaintiff had a fulling mill on the same stream of water with a corn mill belonging to the defendants, who, about ten years ago, raised their dam one foot higher than it had ever previously been; by which the water was thrown back upon the wheel of the plaintiff's mill, and its motion impeded so as to prevent its being used. The plaintiff produced in evidence a grant of the town of *Fairfield*, in which the mills were, dated 1766, authorizing *Nathaniel Perry* to build a fulling mill at the place where said mill now stands. It was proved that this fulling mill was built in pursuance of the grant, more than forty years ago, and had ever since been in constant use. The title of the plaintiff was derived through his father, *Reuben Sherwood*, by deed from him in 1808.

The defendants produced a grant by the town of *Fairfield* to *Joseph Perry*, empowering him to build a corn mill where the defendants' mill now stands, and referring to a certain indenture made between said *Joseph* and a committee of the town. The indenture was produced; and, among other things, it provided " that said *Joseph*

and his assigns should grind all such grists of all sorts of grain as should be brought by any inhabitant of said town, seasonably," &c.; also, that he should put the stream to no other use than that of supporting a corn mill, without leave of the town. The defendants proved that they had all the right and title of *Joseph Perry;* that they, and those under whom they claim, had maintained said mill and dam more than eighty years; and that the dam was not now, and had not at any time been, of greater height than was necessary for the most beneficial management of the mill. It was also proved that while *Reuben Sherwood* was in possession, and before the execution of his deed to the plaintiff, the defendants claimed, and insisted on their right to maintain the dam at its present height; in pursuance of which claim they had, ever since, by their dam, thrown the water back upon the plaintiff's mill wheel, as alleged; and that *Reuben Sherwood* denied their right to maintain their dam at said height. It was claimed, that the conveyance by said *Reuben* to the defendants was, therefore, void by our statute against selling pretended titles.(a)

In charging the jury, the court said, it was unnecessary to decide the latter question; and that, if the jury were satisfied that the fulling mill had been erected and used during the period stated, and that the defendants' dam had been raised within ten years, they would find for the plaintiff. In pursuance of this direction the jury found a verdict for the plaintiff, and the defendants moved for a new trial on the ground of a misdirection by the judge.

*Daggett*, in support of the motion, contended, that the plaintiff had failed to show a title, his deed having been given during the defendants' claim, and correspondent exercise of the right to raise the water. This claim had been continued, and was known to the grantor, years

June, 1810.

SHERWOOD
v.
BURR.

(a) 1 *Stat. Conn.* tit. 97. c. 17. s. 1.

June, 1810. anterior to the conveyance. It was, therefore, a sale of
a disputed right, a quarrel, and void by our statute. I
admit that the plaintiff got a fee-simple in the *land*, that
not being in controversy; but I contend that he did not,
and could not, purchase the quarrel. So far, at any rate,
the deed is void; and, if the law be so, that such disputed
right existing made void the whole deed, be it so; the
case then is still clearer for us.

SHERWOOD
v
BURR.

The plaintiff has never been in possession; and the
statute prevents his taking advantage of the possession
of those under whom he claims; for it would be strange
if one were allowed to prescribe for a right conveyed
with the land, when, under similar circumstances, a con-
veyance of the land itself would be void. [SMITH, J. Do
you find any case where an incorporeal hereditament has
been held to be within the statute? A man may be *dis-
turbed* in the use of an incorporeal hereditament; but can
he be *ousted?*] The case is within the words of the
statute. Our books constantly speak of a person's being
ousted, or deprived, of a right. But if ouster be not pre-
dicable of the right in dispute, we contend that the con-
veyance was void by common law.

The facts did not warrant the direction of the court.
The defendants had not appropriated the water to any
other use than that for which the grant was made. Within
the object of the grant the defendants have a right to use
the water in the most beneficial manner. By the inden-
ture, the grantee and his assigns were bound to grind
seasonably all the corn brought to said mill by the people
of *Fairfield*. It is expressly found, that the defendants'
dam is not higher than is necessary for the improvement
of the mill in the most beneficial manner. The rule
ought not to be the same as in *England;* because our
exigencies are continually varying. In *Perkins* v. *Dow*,
1 *Root*, 535. and *Howard* v. *Mason*, there cited, the court
recognised the right of the defendant to use the water
for his own benefit, though it diminished the value of the

plaintiff's mill. We admit that the plaintiff has no right to raise the water wantonly, nor for the accommodation of any other mill than that authorized by the grant. But as he has done neither of these, as our grant is older than theirs, and clearly contemplates a provision for the increased wants of the society, we are entitled to the enjoyment of the privilege, with the limitation admitted.

The court were divided in opinion in *Fowler* v. *Davidson*, 1 *Root*, 358. The next case between the same parties was decided the other way. This case is not similar to any of the *English* cases. The object of the original grant should be considered.

*R. M. Sherman*, contra, contended, that the defendants had, by their usage, given a construction of their grant, from which, after a lapse of eighty years, they were not at liberty to depart.

From the length of time which we have been in possession, a grant of the privilege of which the defendants have deprived us is to be presumed. The superior court has heretofore gone on the ground that the usage of parties, of sufficient length of time, gives a binding construction of the grant. *Davidson* v. *Fowler*, 1 *Root*, 358. is direct to this point, and a clear authority in our favour. In *England*, twenty years' enjoyment, even though the user were at first wrongful, gives a right, upon which an action on the case may be maintained. In our case, the enjoyment has continued more than forty years, and the user was originally rightful. There is indeed some difference in the *English* cases whether the bar be absolute or presumptive. But on either ground, the law is with us. *Holcroft* v. *Heel*, 1 *Bos. &* *Pull.* 400. *Bealey* v. *Shaw et al.*, 6 *East*, 208. 2 *Wms. Saund.* 117. 3 *Bl. Com.* 216, 217. and notes by *Christian.*

The conveyance is not void by the statute. The statute renders void conveyances of lands, &c. of which the

June, 1810.

SHERWOOD
v.
BURR.

party is disseised. Seisin has a technical meaning, and is not applicable to incorporeal hereditaments.

As to the conveyance being void by common law, the cases are enumerated in *Co. Litt.* 214. a.; ours is not within them. Can the grantor support an action for continuing the nuisance after the alienation? This is the true test; if he cannot the plaintiff can.

MITCHELL, Ch. J. (after stating the case.) The first ground urged for a new trial is, that there was a misdirection or omission of duty in the court, in declaring to the jury that it was unnecessary then to decide the question whether the deed from *Reuben Sherwood* to the plaintiff was affected by, or came within, the statute against selling or purchasing disputed titles. The court are under no obligation to decide every question of law proposed by the counsel, if they are of opinion it does not apply to the case. It would be extraordinary to put questions to the court not applicable, and then move for a new trial because the court would not decide the question *impromptu.*

The object of the statute, as the title purports, was to prevent the buying and maintaining disputes in bargains, and other alienations of lands, &c. It is thereby enacted, " that all bargains, sales or other alienations of lands, tenements, or hereditaments, whereof the vendor or grantor is disseised, or ousted of the possession, by the entry, possession, or improvement of any other person, (the present possessor only excepted,) shall be null and void." The statute contemplates that species of property only of which the vendor may be disseised, or ousted of the possession, by the entry or possession of another. The terms " disseised, or ousted," are used in their technical sense. A person can with no propriety of expression be said to be disseised of a right for the recovery of which a personal action only lies; but of such only as may be restored to him by action of ejectment or real action; these are the only actions which will lie in favour of a person disseised, or ousted, to regain possession.

To apply this to the case under consideration. The defendants did not, by raising their dam, and thereby impeding the plaintiff's grantor in the use of his mill, enter upon and disseise the grantor of the plaintiff. He was never ousted of the actual possession of any lands or tenements, but only hindered and obstructed in the use of a right incident to the land; nor would ejectment, or any other real action, lie to recover the possession of this right, which was not land, but an incident only to the land deeded to the plaintiff by his grantor; and not, therefore, a right intended by, or included in, the statute. As well might it be pretended that a man, by filling a ditch in his own land, and thereby preventing the water from draining off from his neighbour's land, or building a smelting house, or erecting any other nuisance, thereby prevented his neighbour from selling the land with the right to drain off the water by the ditch, or the enjoyment of wholesome air, while the nuisance existed, and subjected the owner to a penalty, if he should sell the land with its appurtenances.

The plaintiff, by his purchase and deed, acquired all the rights which his grantor had. And here it is unnecessary to consider the terms of the original grant from the town of *Fairfield* to either party. The mill of the plaintiff had been erected for more than forty years; and, during the whole of that time, except the last ten years, the stream of water had been suffered to flow off below without interruption, or any obstruction to the injury of the owner of the fulling mill. It is, therefore, now too late to deny the plaintiff's right after so long an enjoyment of the privilege, unless it is lost by some act or negligence of his, or those under whom he claims.

In analogy to the statute of limitations, which gives title to land by fifteen years' adverse possession, the plaintiff must be considered as having acquired a right to use and improve this stream of water in the manner it has been improved for thirty or forty years, whatever his

title to the privilege was by virtue of the grant from the town of *Fairfield*. If necessary to support the plaintiff's title to the privilege, the law would presume a grant even from the defendants, or those under whom they hold. The defendants, by their acquiescence for such a length of time, are to be considered as giving this construction to their grant. Twenty years' undisputed enjoyment of any easement appurtenant to land is sufficient in *England* to raise the presumption of a grant; and in *Bealey* v. *Shaw et al.*, 6 *East*, 214. Lord *Ellenborough* said, that twenty years' exclusive enjoyment of water, in any particular manner, affords conclusive presumption of right in the party so enjoying it. Has the plaintiff lost his title to the privilege by any act of his own, or by negligence? No such act or negligence appears in evidence; he and his grantor have taken the benefit of the privilege for more than forty years; and his possession of it has been adverse to, and exclusive of, all others.

The defendants show no right to raise their dam, and obstruct the water running from the mill of the plaintiff, except what arises out of their own act of raising their dam, which is of recent date, about ten years since. Although at first, by virtue of the grant to *Joseph Perry*, the dam might have been raised to its present height; yet, after a usage to the contrary for so great a length of time, and after other waterworks have been erected on the stream above, which must be lost and destroyed thereby; the right ought to be considered as lost by a non-user of it, and by an adverse possession inconsistent with such right.

The defendants claim the use of this right for ten years only to have been in them. If fifteen years' exclusive adverse possession is the least term of time which can give title to freehold estate, surely as long quiet enjoyment will be required to create a title of the nature in question. Hence it appears that no new trial ought to be granted.

BALDWIN, J. I have no doubt but that by the grant of the lower mill, the grantee had a right to raise his dam so high as to take the full benefit of the water, and so as to use it to the best advantage for the purpose of grinding. The question is, whether he has lost it? It is not necessary in this case to determine how far he will be bound by his own cotemporaneous practical construction, by raising his dam to a certain height, and so continuing it for seventy years; a stronger principle here applies. He has, while his dam remained so raised, permitted another grantee to erect and use, undisturbed, for a period of thirty years, a dam and mill so situated above his as to be free from injury, as his dam was then erected. Thus circumstanced, it appears to me clear, that the second grantee has acquired a right in the use of his mill-seat, free from the interference of the first.

The other judges were of the same opinion.

New trial not to be granted.