ANNIE ALDERMAN *vs.* THE CITY OF NEW HAVEN.

Third Judicial District, New Haven, June Term, 1908.
BALDWIN, C. J., HAMERSLEY, HALL, PRENTICE and THAYER, Js.

A city may acquire the right to maintain a sewer upon and across
  private property by an adverse user for fifteen years; and such
  use is none the less adverse because it may have begun under a
  contract with the property owners, or under such circumstances
  as to confer a right upon the city enforcible in equity.
In the present case the defendant, prior to 1881, had instituted pro-
  ceedings for the extension of a city street over the land in ques-
  tion, through which, when acquired, it intended to build a sec-
  tion of a trunk sewer. The owners of the land objected to the
  extension, but orally proposed to give to the city the right to con-
  struct and maintain the sewer as contemplated, provided it would
  abandon the street extension, make no assessment on them for
  benefits on account of the sewer, and allow them to connect with
  it; a proposition which the city duly accepted and acted upon in
  1881 when it built the sewer which it had ever since maintained.
  *Held* that the city had thereby acquired a prescriptive right to
  maintain the sewer as laid, and that a purchaser of the land in
  1897 took it subject to such easement.
In the absence of proof of actual knowledge of the existence of an
  easement, by successive owners of the fee, knowledge will be
  imputed to them where the possession and use of the land are
  open, visible and apparent, such as a use of the land for a trunk
  sewer, by means of direct connection with which the land itself
  and the buildings thereon are drained.

Argued June 3d—decided August 3d, 1908.

ACTION to secure the removal of a sewer alleged to be
unlawfully maintained by the defendant in and across the
plaintiff's land, and for damages, brought to and tried by
the Superior Court in New Haven County, *Gager, J. :*
facts found and judgment rendered for the defendant, and
appeal by the plaintiff. *No error.*

The facts found, in so far as they are involved in the
discussion and conclusions of the court, are sufficiently
stated in the opinion.

*George E. Beers* and *Harry W. Doolittle*, for the appel-
lant (plaintiff.)

Alderman *v.* New Haven.

*Edward H. Rogers* and *Leonard M. Daggett*, for the appellee (defendant.)

PRENTICE, J.   The relief sought in this action, whether legal or equitable, is asked by reason of a claimed invasion by the defendant of a legal right of the plaintiff.   The right alleged to have been invaded is the plaintiff's right of property in the lands described in the complaint.   The claimed invasion results from the maintenance, past and present, of a sewer through and over these lands.   The defendant in its behalf asserts its unqualified right to do what it has done.

 The sewer in question is an underground trunk line.   It was built in 1881.   The route chosen for it by the city lay through land of Robert M. Burwell and of an adjoining owner named Tuttle.   The city's original plan was to obtain a right of way over these lands by laying out a street along the projected route, in extension of an existing street, and to build the sewer within it, and proceedings to that end had in 1881 been begun and were pending before the board of public works.   At a public hearing appointed by that board upon the subject, Burwell, acting by his son Merritt, who had authority to act for his father, together with Tuttle, appeared and opposed the opening of the proposed new street.   Each then made the proposition that he would give to the city the right to construct and maintain the sewer over the proposed route, which is that of the existing sewer, if the project of laying out the street was abandoned, he be not assessed benefits for such construction, and be allowed to connect with the sewer.   This proposition was thereupon referred to the common council, approved, the proceedings for the layout of the street discontinued, and the board of public works authorized to secure from the landowners the proposed right of way. It did not appear that any writing was ever executed by Burwell, but the minds of the parties met upon the proposition made by him, and the city proceeded to construct the sewer as proposed.   All this was with the knowledge and assent of Burwell, who was present almost daily during

the progress of the work and gave such directions as he wished as to branch-connection provisions, which were complied with; and in all things in relation to the construction of the sewer, the assessment of benefits, and the use of the sewer when built, the parties conformed to and acted in pursuance of the terms of Burwell's proposition.

Burwell continued to own said land, and to make use of the sewer in connection therewith, until his death in 1888, leaving the land to his widow, who in 1895 conveyed a portion of it, being one of the pieces of land described in the complaint, to her son Robert, who in turn conveyed the same to one Stiles in 1898. Another son, Merritt, in 1897 conveyed another portion, being the other piece described in the complaint, to Stiles in 1897. The chain of title to this piece from Mrs. Burwell to Merritt is not given in the record. February 17th, 1905, Stiles quitclaimed both pieces to the plaintiff. Stiles at the time of the acquisition of his titles was fully advised by his grantor, Merritt, who was the son who represented his father in making the proposition recited, of the existence of the sewer, and during the whole period of its existence the visible and apparent building connections therewith and other outward manifestation of its presence have been such that its existence, location and character would become known to any person making such inspection of the premises as an ordinarily prudent person would make, and the city has from time to time by its employees entered upon the premises for the purposes of cleaning and repairing the sewer, which since its construction has been continuously in use by the city as a part of its general sewer system. The connections with the buildings on the plaintiff's premises, which were made shortly after the sewer was built, have ever since continued, and said buildings have continued to be served by said sewer. It did not affirmatively appear that the owners of the property from Robert M. Burwell to Stiles, except Merritt Burwell, had actual knowledge of the location of the sewer. It is found, however, that the visible indications of its location were such, and the acts of the city in

connection therewith such, that they were all chargeable with knowledge of its existence, location and character, and of the claimed right of the city to its maintenance.

It thus appears that the defendant did not construct, and for the seven years of Robert M. Burwell's life and ownership of the property after 1881, maintain, the sewer under a mere naked license from him, that is, under an authority or power to do so uncoupled with an interest in the subject. *Foot* v. *New Haven & N. Co.*, 23 Conn. 214, 223. It acted under an agreement, or the assumption, shared by both parties, of an agreement, entered into between it and Burwell, for a valuable consideration, whereby, in return for certain concessions and privileges, it was to have the right to build the sewer where it was placed and now is, and to there perpetually maintain it. Such an agreement, reduced to writing, signed and duly recorded, would have constituted an enforceable one as against Burwell and his successors in title. None such having, as far as appears, been embodied in a writing, there was nothing which of itself would create obligations which the law would enforce; but when the parties acted as they did in the situation which had developed, conditions arose which equity would not ignore. The finding is to the effect that there was an agreement of the minds—an agreement in form. It matters little whether or not this was so. It was at least true that the city assumed the existence of such an agreement and acted in reliance upon that assumption, and that Burwell must have known that such was the fact. When, therefore, with this knowledge, he stood by and not only saw the city expend its funds in the belief it held, but also actively assented to, encouraged and participated in its action,—when he saw the city conforming in all things to the terms of his proposition, and accepted all his days the benefits which were to come to him by its terms,—he placed himself in a position where, agreement in form or no such agreement, equity and good conscience would impose upon him obligations as effective as those of any contract.

We have, then, for these seven years, however the situation is viewed, all the elements of a user by the city adverse to Burwell. An easement will in this State be acquired by an adverse use of fifteen years. *Coe* v. *Wolcottville Mfg. Co.*, 35 Conn. 175, 177; *Legg* v. *Horn*, 45 id. 409, 415. The user of the city was actual, continuous, known to Burwell, and exclusive of and adverse to him. It was none the less adverse for having been begun under a contract in form, or the assumption of the existence of such a contract, since there was a claim of right resulting therefrom and the attending circumstances, or from the circumstances themselves. *Comins* v. *Comins*, 21 Conn. 413, 416; *Legg* v. *Horn*, 45 id. 409, 415. The claim of right was no less effective to create an adverse holding for the reason that its foundation was in equity. So it was in the case last cited, and here, as there, it was one which a court of equity would have enforced. *Williams* v. *Morris*, 95 U. S. 444; *Legg* v. *Horn*, 45 Conn. 409, 415. It is sufficient for the creation of an adverse possession that the possessor enters and possesses as if the land were his own. *Johnson* v. *Gorham*, 38 Conn. 513, 520; *Carney* v. *Hennessey*, 74 id. 107, 111, 49 Atl. 910.

Passing now to the seventeen years which immediately followed Robert M. Burwell's death and bring us down to the plaintiff's acquisition of title, we find that essentially the same condition of things continued during this entire period. The defendant's possession and use remained an actual and exclusive one. It was under a claim of right, the same claim as before Burwell's death, and therefore adverse. *French* v. *Pearce*, 8 Conn. 439, 443. The possession and use were so open, visible and apparent, and of such a nature, that in the absence of actual knowledge thereof, and of their adverse character on the part of the successive fee owners, such knowledge will be imputed to them. *School District* v. *Lynch*, 33 Conn. 330, 334; *Carney* v. *Hennessey*, 74 id. 107, 111, 49 Atl. 910; *Clark* v. *Gilbert*, 39 Conn. 94, 97. The continuity of these conditions was unbroken from the beginning.

Such conditions have, therefore, attended the mainte-
nance by the defendant of this sewer along its present route,
that a legal right to so maintain it was perfected and an
easement therefor created by prescription long before the
plaintiff became the owner of her land.  *Legy* v. *Horn*, 45
Conn. 409.

The plaintiff objected to the testimony of Merritt Bur-
well as to the proposition which he made on behalf .of his
father at the meeting of the board of public works, upon
the ground that his authority to make the proposition. and
enter into an agreement with the city was not sufficiently
established by his statement that for a number of years
prior to his father's death he had had practical charge of
the latter's affairs and that his father told him to appear at
the meeting and object to the layout of the sewer as pro-
posed.   The story of what occurred at the meeting was
clearly admissible as a part of the history which led up to
the construction of the sewer, and the authority of the son
to fully represent the father in what he proposed, either
originally or by ratification, is too apparent to admit of
question.

The records of the court of common council, disclosing
the report to it of the board of public works and its action
thereon, were admissible to show its doings.   3 Wigm. on
Ev., § 1661.   The subject-matter was relevant, since it
tended to show the city's acceptance of the Burwell prop-
osition and that it acted upon the strength of it.

Other rulings objected to are too unimportant to call for
discussion, or the objections thereto have been waived.

There is no error.

In this opinion the other judges concurred.