DOMICELE AKSOMITAS *v.* THE SOUTH END
REALTY COMPANY

MALTBIE, C. J., BROWN, JENNINGS, ELLS AND DICKENSON, JS.

278

Argued November 2—decided December 14, 1949.

*Francis P. Pallotti,* with whom were *John B. Lacava* and *Stanley J. Grudzinski,* for the appellant (plaintiff).

*Douglass B. Wright,* with whom was *William W. Sprague,* for the appellee (defendant).

Brown, J.   The principal issue presented upon this appeal is whether the court erred in denying the plaintiff injunctive relief against the defendant's interference with her claimed right of way over its land through her rear gate to the public highway.   The plaintiff has appealed from the court's judgment for the defendant and has assigned error in its finding, conclusions and judgment.

We summarize the material undisputed facts.   Since June 20, 1930, the plaintiff has been the owner of 15 Capitol Avenue in Hartford.   The premises consist of a lot fronting 22 feet on the street and 101.85 feet deep, with a house thereon which she has occupied with her family and has operated as a rooming house since she bought it.   It is a house with a party wall on each side in a row of nine houses which have no intervening alley or passway.   The house is on the south side of Capitol Avenue, and, except by the front entrance and thence through the house, the only access to the rear yard is over the defendant's land, which adjoins it on the south.   The defendant's property, 373-381 Main Street, consists of a brick building fronting on the westerly side of Main Street occupied by stores on the first floor, with a gangway on the south side leading to its vacant land in the rear, the westerly part of which abuts the easterly side of Whitman Court.   The distance between the rear of the defendant's building and

Whitman Court is about 170 feet, and that between the south boundary of the defendant's land and the rear of the plaintiff's land is approximately 30 feet, widening to 45 feet at Whitman Court. The gangway is a common driveway, one-half of it being upon the property adjoining the defendant's on the south.

In May, 1931, the plaintiff petitioned the selectmen to order a fence built between the rear of her property and what is now the defendant's vacant land next south of it. In response to the plaintiff's suggestion that she desired to have a gate in this fence, the representative of the bank which was the managing agent for the then owners of the abutting land told her that if she wanted a gate in the fence she would have to pay for the fence herself. Shortly after, the fence was erected at her expense and a gate was installed therein opposite the rear door of her house. This gate was three and a half feet wide; it remained open and was used from June, 1931, until July 25, 1947. It afforded means of egress from the plaintiff's land to that now owned by the defendant, and of ingress from the latter to that of the plaintiff. It was in continuous use from June, 1931, to July 25, 1947, for the passage on foot of the plaintiff, her family, her tenants and callers. During this period what is now the defendant's land to the rear of that of the plaintiff was open and it was possible to pass from the plaintiff's land on foot westerly over the land now of the defendant to Whitman Court and easterly to Main Street by the common driveway. During all of this time meat, groceries, vegetables, coal, furniture and other items of like nature were delivered from Main Street through the alley and from Whitman Court over what is now the defendant's land to the rear of the plaintiff's land by carts, trucks and similar vehicles. These stopped opposite the gate, and delivery of the articles was made on foot through the

gate to the plaintiff's rear door. Sometimes the vehicles turned around and went out the way they came in, and sometimes they continued on through in the direction in which they were proceeding.

Neither the plaintiff nor her tenants have ever obtained permission or license of any sort from the defendant or its predecessors in title for use of the right to pass and repass on foot or by vehicle over the land of the defendant referred to above. Neither she nor any of them has ever paid any consideration for such use. At no time did the defendant or its predecessors in title exercise their right under what are now §§ 7130, 7131 and 7132 of the General Statutes to prevent the plaintiff from acquiring a right of way by adverse use. On July 25, 1947, the defendant chained the gate shut and strung this chain along all of the rear line of the plaintiff's lot in such a way as to prevent and interfere with the user of the plaintiff, whereupon this action was brought for injunctive relief.

The essential elements of a right of way by prescription, which is the basis of the plaintiff's claim, are (1) a use which is open and visible, (2) which is continuous and uninterrupted for fifteen years, and (3) which is engaged in under a claim of right. *C. B. Alling Realty Co.* v. *Olderman,* 90 Conn. 241, 247, 96 A. 944. Actual user determines the nature of the use and the extent to which the servient land is bound. *Hawley* v. *McCabe,* 117 Conn. 558, 560, 169 A. 192; *Lawton* v. *Herrick,* 83 Conn. 417, 424, 76 A. 986. As regards any particular use of servient property, the use must have been so open, visible and notorious "as to give the owner knowledge and full opportunity to assert his own rights." *Exley* v. *Gallivan,* 96 Conn. 676, 679, 115 A. 482; *Ricci* v. *Naples,* 108 Conn. 19, 25, 142 A. 452. A claim of right by prescription must be reasonable. *Merwin* v. *Wheeler,* 41 Conn. 14, 25; *Lawton* v.

*Herrick,* supra. Hence an indefinite user of a tract of land for passage cannot establish a .way by prescription. *Speight* v. *Anderson,* 226 N. C. 492, 496, 39 S. E. 2d 371; note, 143 A. L. R. 1403; 28 C. J. S. 670; cf. *New Britain Trust Co.* v. *Spencer,* 117 Conn. 402, 404, 168 A. 16.

The claim of the plaintiff as treated by the trial court has two phases: right of passage through the gate in the rear of her property across the defendant's land either through the gangway to Main Street or to Whitman Court; and the right to the use of the defendant's land for trucks to come to the gate to deliver merchandise and for like purposes. The facts recited above leave no doubt that, in so far as the existence of the gate and its use by the plaintiff and her household in passing through on foot to and from the defendant's land are concerned, these were open and visible. They establish that this use was one well defined on the land. They also make clear that this use continued for more than fifteen years, and no fact is found to indicate that it was other than continuous and uninterrupted. Not only is it expressly found that no resort was had to the statutory procedure to interrupt it but there is no finding that either the defendant or any of its predecessors in title ever forbade or objected to this use, or did anything which stopped or interrupted it until the installation of the chain after it had continued for more than fifteen years. The court's findings concerning the leasing of the land in the rear of the defendant's building and the use made of it by the lessees are insufficient to establish an interruption of the plaintiff's use in question. Their use included for a part of the time the parking of cars by customers of certain stores in the defendant's building, and for some years the conduct of a parking lot, in connection with which there was a sign at the rear: "No trespassing.

Parking $3.00 per month." The court's finding that there were two such signs and that the lessee kept off all intruders who did not pay the required parking fee is not supported by the evidence and is stricken out. The leasing of the lot constituted no interruption per se of the plaintiff's use of the gateway. Neither did the use made for parking, since it not only is not found that this interfered with the plaintiff's use but the undisputed facts found affirmatively establish that it did not. "Use, to give rise to a prescriptive right, need not exclude the holder of the legal title from the premises." *Horowitz* v. *F. E. Spencer Co.*, 132 Conn. 373, 376, 44 A. 2d 702.

A finding that a claim was actually made and brought to the attention of the owner of the fee is not essential to establish the third requisite, that the user was made under a claim of right. This requires nothing more than a user "as of right," that is, without recognition of the rights of the landowner. *Horowitz* v. *F. E. Spencer Co.*, supra, 378. The plaintiff's continuous, open user of the gateway over the years without resort to permission or license from the defendant or its predecessors in title establishes that this was a user as of right. This is confirmed by the court's reference in its memorandum of decision, which is made a part of the finding, to the defendant's reaction to the plaintiff's user as being "in the nature of a benevolent condonation of a trespass." Under the circumstances, there is a presumption that the holder of the legal title has acquiesced, and no specific finding of acquiescence is necessary. *Horowitz* v. *F. E. Spencer Co.*, supra, 376. Upon these facts, in the absence of actual knowledge of the user and its adverse nature, such knowledge will be imputed to the landowner. *Alderman* v. *New Haven*, 81 Conn. 137, 141, 70 A. 626. The court found, however, that none of the uses were with the

knowledge or acquiescence of the defendant or its predecessors in title. As confined to the use of the gateway, not only was this in conflict with the material facts found, as sufficiently appears from what we have said, but there is substantial evidence that the bank as agent for the owners was charged with actual knowledge of the installation of the gateway in 1931 and also of the use made of it for a number of years thereafter. This finding and, for equally obvious reasons, the finding that "none of the uses were hostile to the owners" are stricken out. As so corrected, the subordinate facts do not support the court's conclusions which determine that the plaintiff had no prescriptive right to the use of the gateway. It follows that the court's judgment denying the plaintiff injunctive relief, in so far as it is predicated on this ground, is erroneous.

The record shows, however, that the court in support of the judgment rested its decision not only upon its determination that the plaintiff had failed to establish a right of way by prescription under § 7130 of the General Statutes, which prescribes the requisites of acquiring an easement by adverse use, but also upon its conclusion that she had failed to establish such a right under § 8314, which relates to the acquiring of title to land by adverse possession. In so far as the court relied upon the latter ground, it acted under a misconception as to the law applicable and determinative of the plaintiff's right. Not only does the finding show that no claim under § 8314 was made by the plaintiff but the law is clear that that section, entitled "Entry upon land to be made within fifteen years," applies only to the acquiring of title to land by adverse possession, while § 7130 covers the acquiring of easements by prescription. This section is the first in chapter 355, captioned "Easements," and is entitled "Acquired by adverse use, when." This is the statute applicable

in this case, and § 8314 does not apply. Accordingly, the repeated reference in the court's memorandum of decision, finding and conclusions to an "ouster" by the plaintiff of the defendant from "possession," and to the "exclusive" use "essential to the establishment of title by adverse possession," is of no significance in so far as the issues determinative of this case are concerned. Section 8314 does contain a proviso that "the limitation herein prescribed shall not begin to run against the right of entry of any owner of a remainder or reversionary interest in real estate" which is in the adverse possession of another until the expiration of the particular preceding estate; it is undisputed that one of the joint predecessors in title to the defendant's land did not acquire an absolute one-half interest in it until 1942; but this cannot avail to sustain the defendant's claim that the plaintiff could not have acquired a prescriptive right as against this interest because the statute does not apply to the acquisition of easements by prescription.

Since the court's error in failing to recognize the plaintiff's right of way through the gate requires a remand of the case, her claim of a further right of way over the defendant's land to the highway calls for but brief mention. On the evidence which was presented at the trial, the court's finding of fact that there was no defined passway or driveway over the defendant's land to which her use was confined, but that her use was indiscriminate over the entire area, cannot be disturbed upon this appeal. Under the principles we have stated, this would suffice to defeat any right of way by prescription. Upon the whole record, however, we are satisfied that there should be a new trial wherein the plaintiff may have opportunity to offer such evidence as she can to satisfy this and the other

essential requirements of a right of way by prescription to which we have referred.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.