[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 Factual Background
The genesis of this action stems from a foreclosure action initiated by the defendant condominium association against the then owner of a condominium known as Unit #123 in the defendant's complex in Glastonbury. The owner Paul Capuano had mortgaged his interest to Burritt Interfinancial Bank Corp. (Burritt) which has a first mortgage lien on the property in the amount of $100,000. Burritt assigned the mortgage to the plaintiff (then known as the Massachusetts Company), prior to the commencement of the foreclosure action. The plaintiff, however, intentionally did not record the assignment. Its reason was stated in this action as "to facilitate administrative requirements." CT Page 9833
Subsequently, Burritt failed and the Federal Deposit Insurance Corporation (FDIC) was appointed as Receiver. The FDIC transferred the loan to Derby Savings Bank (Derby) for servicing. The plaintiff still did not record its assignment.
Approximately three years later, Capuano defaulted on his condominium common charges and the defendant commenced foreclosure, serving the receiver for Burritt, the first mortgage holder of the record. Judgment of strict foreclosure was entered on August 12, 1996 and the law days began to run on September 16, 1996. The court found the fair market value of the property to be $95,000. The plaintiff apparently learned of the foreclosure from Derby in a letter dated September 30, 1996. The delay on Derby's part was apparently a result of confusion on the part of the FDIC. Nevertheless, the plaintiff did not record its assignment until October 29, 1996, well after title had vested in the defendant.
 Issue
Both parties are seeking summary judgment, claiming that inasmuch as the facts of this matter are undisputed, they are entitled to judgment as a matter of law.
The plaintiff claims that it is so entitled because it claims that the defendant was unjustly enriched inasmuch as its entire debt including costs was only $6,622 whereas it received a property valued at $95,000. The plaintiff's debt stands at $99,721. It alleges lack of knowledge of the foreclosure until after the defendant's title was vested in it. The plaintiff claims that pursuant to the law of unjust enrichment, it is contrary to equity and good conscience for the defendant to retain this windfall which has come to the defendant at the plaintiff's expense.
Plaintiff's response to the claim of estoppel and laches is simply that it didn't delay in recording when informed of the default by Capuano and doesn't challenge the foreclosure action.
The defendant asserts that the plaintiff is not entitled to prevail under the doctrine of unjust enrichment because in the light of the circumstances and conduct of the parties in this case, namely that this plaintiff intentionally placed itself in the position of being foreclosed out by its failure to record its CT Page 9834 assignment of the mortgage.
The defendant further alleges that the plaintiff is estopped from asserting its claim for unjust enrichment because of its failure to record, and guilty of laches because of its delay in asserting its claims.
 Law and Conclusion
This court should enter judgment "if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." P.B. § 17-44Home Ins. Co. v. Aetna Life and Casualty Co., 235 Conn. 185
(1995). Since there is no factual issue in this case, the court may determine these motions pursuant to our law of unjust enrichment.
The question in the case is whether equity may be applied to a situation where the party seeking equity intentionally disregarded the statutory requirements that it record its assignment of mortgage. Ricci v. Naples, 108 Conn. 19, 24 (1928).
In Connecticut National Bank v. Chapman, 153 Conn. 393, 399
(1966), our Supreme Court discussed the ground rules for recovery under the doctrine of unjust enrichment. The court said "a right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situations it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another. It is not necessary in order to create an obligation to make restitution or to compensate, that the party unjustly enriched should have been guilty of any tortious or fraudulent act. The question is: Did he, to the detriment of someone else, obtain something of value to which he was not entitled?"
In Barbara Weisman, Trustee v. Kaspar, 233 Conn. 531, 550
(1995), the court referred to its position as follows: ". . . it becomes necessary in any case where the benefit of the doctrine is claimed, to examine the circumstances and the conduct of the parties and apply this standard."
The court concluded ". . . Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefitted [benefited], (2) that the defendants unjustly did not pay the CT Page 9835 plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment."
Traditionally, our courts have granted relief to a party who without fault on his own part has been caused to seek such relief. Hoey v. Investors Mortgage Guaranty Co., 118 Conn. 226,230 (1934). More recently a superior court decision extended relief to a party pursuant to the doctrine of unjust enrichment where its loss occurred because of its own negligence. FirstFederal Savings and Loan Association of Rochester v. DelnorCondominium Association, Inc., Connecticut Superior Court, J.D. of Hartford New Britain of Hartford, No. CV 92-0517881, Satter, J.
Coincidentally, that case similarly involved a windfall occurring to a condominium association because of a bank's negligent failure to redeem. In that case the bank's attorney had negligently failed to forward the bank's check to the condominium association's attorney on its law day even though he had previously advised the attorney of his intention to do so. The court applied the doctrine and granted relief, opining, that our courts have never refused to bar relief because of the negligence of the party seeking it, but instead must look to the circumstances of the particular case. The court specifically held that "where the value of property acquired by a lienor by way of strict foreclosure exceeds the amount of the debt . . . cannot itself be controlling. Otherwise a flood of litigation would follow strict foreclosure judgments." The court also recognized an important public policy implicated: the finality of title acquired by foreclosure, as reflected in General Statutes Sec.49-15.[1] This court agrees with and endorses Judge Satter's opinion in Delnor, supra.
The factual scenario in the instant case, however, is fundamentally different, requiring a contrary conclusion.
Here, the defendant played no part whatsoever in the plaintiff's failure to act. The defendant was neither tortious nor fraudulent.
The plaintiff's failure to record its assignment was not inadvertent or negligent but deliberate and intentional. The plaintiff decided that it would not comply with statutory requirements because it wished "to facilitate administrative requirements" in an apparent alleged compliance with an industry practice. CT Page 9836
The plaintiff has cited no case, nor is this court aware of any case, wherein the relief sought here was granted.
This court sees no reason under the circumstances in this case to grant relief, wherein the party seeking such relief specifically ignored the statutory requirement, suffered a loss because of it, and now seeks redress in this court.
To grant such relief would be to encourage such conduct and to ignore the finality of title imposed by our statute.
The defendant's motion for summary judgment is granted and the plaintiff's motion for summary judgment is denied.
FREED, J.